UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHRIS LOPEZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 11 C 4599 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| PACTIV CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Chris Lopez alleges in this suit that his former employer, Pactiv Corporation, violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*., and Illinois law by terminating him after he requested and took a short leave to care for his ill spouse. Pactiv has moved for summary judgment. Doc. 63. The motion is granted in part and denied in part.

Although the full factual background of this case is extensive, the facts necessary to resolve Pactiv's motion—which are stated as favorably to Lopez as permitted by the record and Local Rule 56.1—are relatively simple. Pactiv hired Lopez as a Labor Relations Manager in May 2006. Doc. 65 at ¶ 5; Doc. 70 at p.1, ¶ 5. At first, Lopez reported to Bob Creviston, Director of Labor Relations, who in turn reported to Mike Mysliwiec, Vice President of Field Human Resources, who in turn reported to Henry Wells, Chief Human Resources Officer. Doc. 65 at ¶¶ 6-7; Doc. 70 at p. 1, ¶¶ 6-7. Creviston left Pactiv in mid-2007, and Lopez was promoted in his place, reporting to Mysliwiec. Doc. 65 at ¶ 9; Doc. 70 at p. 1, ¶ 9.

On February 13, 2008, Lopez acknowledged receipt of a performance review dated January 25, 2008. Doc. 65 at ¶ 15; Doc. 70 at p. 2, ¶ 15. Although the review noted problems

with Lopez's performance, Doc. 65 at ¶¶ 16-19; Doc. 70 at p. 2, ¶¶ 16-19, he received an overall evaluation of "Achieved Expectations" and a substantial pay increase, Doc. 75 at ¶¶ 4, 7. During the course of his two-year tenure with Pactiv, Lopez received a promotion, three pay increases, two incentive awards, and a grant of performance shares, and he never was placed on a performance objectives or performance improvement plan. *Id*. at ¶¶ 4-5.

In May 2008, Pactiv hired Mike Oliver to replace Wells. Doc. 65 at ¶ 20; Doc. 70 at p. 3, ¶ 20. On May 28, 2008, Oliver met with Lopez in Oliver's office. Doc. 65 at ¶ 27; Doc. 70 at p. 4, ¶ 27. As Oliver recalls the meeting, Lopez's performance problems were discussed. Doc. 65 at ¶ 29; Doc. 70 at p. 4, ¶ 29. Following the meeting, Lopez felt that his job might be at risk. Doc. 65 at ¶ 30; Doc. 70 at p. 4, ¶ 30.

In June 2008, Lopez's wife was diagnosed with skin cancer. Doc. 65 at ¶ 47; Doc. 70 at p. 4, ¶ 47. On or around June 20, 2008, Lopez told Mysliwiec that he would need a couple of days off at the end of June 2008 because his wife was going to have surgery. Doc. 65 at ¶ 48; Doc. 70 at p. 4, ¶ 48; Doc. 75 at ¶ 2. Lopez was eligible for FMLA leave. Doc. 75 at ¶ 3. Mysliwiec approved Lopez's request, and Lopez was paid for the days he took off. Doc. 65 at ¶¶ 49, 51; Doc. 70 at p. 4, ¶¶ 49, 51. Lopez did not tell Oliver about his wife's medical condition or about his request for time off. Doc. 65 at ¶ 52; Doc. 70 at p. 4, ¶ 52. Mysliwiec never told Oliver about Lopez's request for time off, and Oliver avers that he was unaware of either Lopez's wife's condition or Lopez's request. Doc. 65 at ¶¶ 53-55; Doc. 70 at p. 5, ¶¶ 53-55. Lopez did not submit any FMLA paperwork requesting an FMLA leave of absence. Doc. 65 at ¶ 56; Doc. 70 at p. 5, ¶ 56.

On July 7, 2008, at a meeting with Mysliwiec and Steve Massie, the Manager of Human Resources, Lopez was informed that he was being terminated. Doc. 65 at ¶¶ 42-44; Doc. 70 at p. 4, ¶¶ 42-44; Doc. 71 at 57. In his Local Rule 56.1(b)(3)(C) statement, Lopez asserts that he "was advised specifically by Steven Massie that Mike Mysliwiec had made the determination to end [Lopez's] employment." Doc. 70 at p. 7, ¶ 11. Pactiv responds that the evidentiary material cited by Lopez does not support his assertion, Doc. 75 at ¶ 11, but Pactiv is wrong. Lopez cites a July 16, 2008 email from Massie to Lopez, which states in pertinent part: "As he told you during the separation meeting, Mr. Mysliwiec did not consider you to be fit based upon concerns about your credibility, anger management, judgment, timeliness and lack of awareness. He also referenced and told you to reflect upon the prior conversations that he had with you." Doc. 71 at 57. Drawing a reasonable inference in Lopez's favor, which the court must do at summary judgment, Massie's email indicates that Mysliwiec made the decision to fire Lopez; indeed, the email indicates this even without the benefit of an inference in Lopez's favor.

Pactiv also maintains that Massie's email is inadmissible hearsay. Doc. 75 at ¶ 11. That, too, is wrong. Because Massie was Pactiv's Manager of Human Resources, and because his email pertained to the termination of Lopez's employment, the email is covered by Federal Rule of Evidence 801(d)(2)(D), which excludes from the hearsay rule a "statement … offered against the opposing party [that] was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D); *see Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 823 (7th Cir. 2011) ("[t]he plaintiff's manager was involved in the decisionmaking process affecting the employment action, which was enough to make her statement an admission under Rule 801(d)(2)(D)" and thus admissible at summary judgment).

Count III of the complaint alleges that Pactiv violated the FMLA by terminating Lopez in retaliation for exercising his FMLA rights. Doc. 1 at ¶¶ 27-29. The FMLA "protects employees from being discriminated or retaliated against for exercising their FMLA rights." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008) (citing 29 U.S.C. § 2615(a)(2), (b)); *see also Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012); *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (noting that 29 U.S.C. § 2615(a)(2) & (b) "create[s] a cause of action for retaliation"). The Seventh Circuit assesses "a claim of FMLA retaliation in the same manner that [it] would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII." *Burnett v. LFW Inc.*, 472 F.3d 471, 481 n.5 (7th Cir. 2006) (internal quotation marks omitted); *see also Scruggs*, 688 F.3d at 826; *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009); *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Thus, Lopez may defend his FMLA retaliation claim on summary judgment under either the direct or indirect methods of proof. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012).

To forestall summary judgment under the direct method, Lopez "must show: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012); *see also Scruggs*, 688 F.3d at 826; *Makowski*, 662 F.3d at 824; *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009); *Caskey*, 535 F.3d at 593. Lopez took FMLA leave and was fired, meeting the first two elements. *See King v. Preferred Technical Grp.*, 166 F.3d 887, 893 (7th Cir. 1999) ("[The plaintiff] engaged in protected activity by taking leave pursuant to the FMLA, and [the defendant's]

termination of [the plaintiff] qualifies as an adverse employment decision."). Pactiv contends that Lopez cannot meet the third element, a causal connection between his FMLA leave and his firing. Doc. 64 at 6-8.

Pactiv's argument rests on its submission that Oliver decided to fire Lopez shortly after their meeting on May 28, 2008, weeks before Lopez's wife was diagnosed with skin cancer and weeks before Lopez took his FMLA leave. Doc. 64 at 6-8. A reasonable jury certainly could conclude from the evidence of record—Lopez's performance problems, and Oliver's testimony that he had decided in late May 2008, before Lopez requested FMLA leave, that Lopez did not possess the qualities he wanted in a core member of his team, Doc. 65 at ¶¶ 31-41—that Pactiv is right. But as noted above, Massie's email also would allow a reasonable jury to find that Mysliwiec, not Oliver, made the decision to fire Lopez. (Although Lopez does not expressly reference Massie's email in his opposition brief, the court still must consider the email because Lopez properly presented it in his Local Rule 56.1(b)(3)(C) statement. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397-99 (7th Cir. 2012) (holding that the district court erred in declining to consider a fact that the non-movant failed to mention in his brief but that he properly presented in his Local Rule 56.1 statement).) Together with other record evidence—Mysliwiec learned of Lopez's wife's skin cancer and his FMLA leave about two weeks before Lopez was fired; Lopez's receipt of a promotion, three pay increases, two incentive awards, and a grant of performance shares during his tenure at Pactiv; and Lopez's receipt of a substantial pay increase and an "Achieved Expectations" rating even after his performance problems had come to light—evidence that Massie rather than Oliver made the termination decision could lead a reasonable jury to conclude that Lopez would not have been fired had he not taken FMLA leave.

*See Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 996 (7th Cir. 2010) ("[T]here is enough evidence in the record for a jury to find that the defendants fired Goelzer because she had utilized FMLA leave and not because Payne wanted to hire a new person with more skills. For example, Goelzer had received positive performance reviews, and none suggest on their face that they were the result of any 'lowered expectations' from Payne. … Payne also communicated the termination decision after he knew Goelzer planned to be out for two months on FMLA leave, and she had utilized a significant amount of FMLA leave in the years preceding the decision. Although the defendants disclaim any causal connection between Goelzer's requests for and use of FMLA leave and her firing, we conclude that a jury could find otherwise."); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) ("We can imagine circumstances in which the timing of this decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware)."). That may not be the most likely outcome, but its reasonableness is sufficient to forestall summary judgment on the retaliation claim.

Counts I and II of the complaint allege that Pactiv fired Lopez to interfere with his taking of FMLA leave. Doc. 1 at ¶¶ 15-26. (The distinction between the two counts is unclear, so they are treated as one claim.) The FMLA entitles employees to twelve workweeks of unpaid leave, which can be taken intermittently, to care for a spouse with a serious health condition. *See* 29 U.S.C. § 2612(a)(1)(C), (b)(1); *Scruggs*, 688 F.3d at 825. And the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any

right provided" under the FMLA. 29 U.S.C. § 2615(a)(1); *see Scruggs*, 688 F.3d at 825. An FMLA wrongful termination claim "can be brought under either a discrimination/retaliation or interference/entitlement theory." *Nicholson*, 690 F.3d at 827 (internal quotation marks omitted). "The difference between the two theories is that a retaliation claim requires the employee to prove discriminatory or retaliatory intent while an interference claim only requires the employee to prove that the employer denied him entitlements provided by the Act." *Pagel*, 695 F.3d at 626; *see also Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443-44 (7th Cir. 2011); *Goelzer*, 604 F.3d at 995; *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

To survive summary judgment on his FMLA interference claim, Lopez must show that: "(1) he was eligible for the FMLA protections; (2) his employer was covered by FMLA; (3) he was entitled to take leave under [the] FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013) (internal quotation marks omitted); *see also Nicholson*, 690 F.3d at 825; *Makowski*, 662 F.3d at 825; *Goelzer*, 604 F.3d at 993; *Burnett*, 472 F.3d at 477. Pactiv disputes only the fifth element, that Pactiv denied Lopez FMLA benefits to which he was entitled. Doc. 64 at 4.

Lopez admits that Pactiv granted him the leave he requested in June 2008 and at all previous times. Doc. 65 at ¶¶ 58-59; Doc. 70 at p. 5, ¶¶ 58-59. It follows that Pactiv is entitled to summary judgment on the FMLA interference claim to the extent it pertains to leave requested and taken by Lopez through June 2008. The parties dispute, however, whether Pactiv terminated Lopez to deprive him of FMLA benefits that he would have taken in the future had he remained with Pactiv. On that point, the Seventh Circuit has held that "an employee might be able to

sustain [his] FMLA interference claim against an employer who waited until the employee took leave to fire her for problems of which the employer was already aware." *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 714 (7th Cir. 2009). For the reasons stated regarding Lopez's retaliation claim, a jury could conclude that Pactiv unlawfully interfered with Lopez's FMLA leave on this theory, rendering summary judgment inappropriate. *See Goelzer*, 604 F.3d at 996 ("As is the case with her interference theory, *cf. Burnett*, 472 F.3d at 482 (noting similarities of FMLA interference and retaliation analyses in case before it) then, summary judgment is not appropriate on her retaliation action").

Count IV of the complaint alleges that Pactiv violated Illinois contract law by failing to reimburse Lopez for business expenses he incurred while at Pactiv. Doc. 1 at ¶¶ 30-33. Pactiv's travel policy, which the parties assume without explicitly saying has the force of contract, provides that Pactiv employees "are to submit their expenses using the NE7 expense report system on PactivNet," that "[o]riginal dated receipts are required," and that "[e]mployees are responsible for ensuring they submit expense reports in a timely manner." Doc. 65 at ¶¶ 65-67; Doc. 70 at p. 5, ¶¶ 65-67. On July 16, 2008, about a week after the termination, Pactiv informed Lopez that he had "been reimbursed for all business expenses for which expense reports and receipts were filed by [him] per travel expense policy" and told him that he should "submit reports and receipts for any other business expenses [he] may have incurred." Doc. 65 at ¶¶ 75-76; Doc. 70 at p. 5, ¶¶ 75-76. As of June 2010, Lopez had not submitted any additional receipts for reimbursement. Doc. 65 at ¶ 77; Doc. 70 at p. 5, ¶ 77.

Pactiv argues that Lopez's failure to submit reimbursement requests at any point between July 2008 and June 2010 necessarily means that he did not meet his obligation to submit expense

reports "in a timely manner." Doc. 64 at 13-14. It would be hard to quarrel with this argument if Lopez indisputably had been dawdling for two years. But Lopez's Local Rule 56.1(b)(3)(C) statement asserts, without contradiction from Pactiv, that he "was required to leave the premises of [Pactiv] on July 7, 2008 and was given no access to any records or electronic systems necessary to resubmit business expense reimbursement requests as requested by Defendant." Doc. 75 at ¶ 13. In light of this evidence, a reasonable jury could conclude Pactiv's conduct prevented Lopez from submitting his expense reports in a timely manner, and therefore that Lopez is entitled to reimbursement for expenses for which he has not already been reimbursed. *See Tabatabai v. West Coast Life Ins. Co.*, 664 F.3d 663, 666 (7th Cir. 2011) ("In contract law, the general principle known as the doctrine of prevention provides that, 'if one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused.'") (quoting 13 Richard A. Lord, Williston on Contracts § 39:3 (4th ed. 2000)); *id*. at 667 ("[T]he nonoccurrence or nonperformance of a condition is excused where that failure of the condition is caused by the party against whom the condition operates to impose a duty.") (internal quotation marks omitted) (alteration in the original).

Finally, Count V of the complaint alleges that Pactiv's alleged mistreatment of Lopez constitutes intentional infliction of emotional distress. Doc. 1 at ¶¶ 34-36. To prevail on an intentional infliction of emotional distress claim under Illinois law, Lopez must show that: (1) Pactiv's conduct was extreme and outrageous; (2) Pactiv either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) Pactiv's conduct actually caused severe emotional distress. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006); *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th

Cir. 1997); *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (Ill. 2003); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. 2000). The first requirement, "extreme and outrageous" conduct, turns on these factors: (1) the power and control the defendant had over the plaintiff; (2) whether the defendant reasonably believed his objective was legitimate; and (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *See McGrath*, 533 N.E.2d at 809-11. Liability is triggered only when the defendant's conduct is so outrageous and extreme as to "go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (internal quotation marks omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" are insufficient. *Ibid.*; *see also Van Stan*, 125 F.3d at 567 (same). The court "judge[s] whether conduct is extreme and outrageous on an objective standard based on all the facts and circumstances of a particular case." *Van Stan*, 125 F.3d at 567.

Pactiv argues that its alleged misconduct does not rise to the level of "extreme and outrageous conduct." Doc. 64 at 11-13. Pactiv notes that the standard for "extreme and outrageous" conduct is particularly high in the employment context, given the "fear that, if the anxiety and stress resulting from discipline, job transfers, or even termination could form the basis of an action for emotional distress, virtually every employee would have a cause of action." *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. 1999); *see also Naeem*, 444 F.3d at 605 ("Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, 'if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'") (quoting

*Graham*, 742 N.E.2d at 867). Pactiv adds that the Seventh Circuit has rejected emotional distress claims even when the employer is alleged to have terminated or otherwise mistreated an employee under truly reprehensible circumstances. *See Lewis v. Sch. Dist. #70*, 523 F.3d 730, 746 (7th Cir. 2008) (affirming the grant of summary judgment on an intentional infliction of emotional distress claim under these circumstances: "[The] defendants … knew that [the plaintiff] was in an emotionally fragile state and, in reckless disregard for her condition and aware that it would cause her severe and emotional distress, [the defendants] permanently reassigned her to a lower position. [In addition, one defendant] feigned kindness towards her in the time leading up to her dismissal, intentionally misleading her about his true intentions so that he could keep her working until he was able to find a replacement bookkeeper. His subsequent betrayal, firing her without warning and giving her job to his old friend, caused her particular emotional distress. She claims that her fragile emotional state thereby was broken, and she experienced the physical symptoms of depression and anxiety."); *Van Stan*, 125 F.3d at 569 (holding that the employer was entitled to judgment as a matter of law even where the employer "knew that [the plaintiff] suffered from a bipolar disorder, that [the employer] fired [the plaintiff] because his disorder required him to work less hours, that [a manager] telephoned [the plaintiff] at home while he was on vacation to inform him that he had been terminated and that after [the plaintiff] requested an explanation, [the manager] falsely told [the plaintiff] that he was being fired for low productivity"); *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (holding that the plaintiff failed to allege conduct rising to the level of "extreme and outrageous" conduct where she alleged the following discriminatory conduct: "not being allowed to supervise two white subordinates; being reprimanded for no reason; being refused participation in the

Tribune's Management Incentive Fund; being forced out of her management position as EEO/Employment Manager; being promised a promotion in advertising she was never given; having a major account [Montgomery Ward] taken away from her and being given one of the least lucrative sales territories; being excluded from office activities; not being advised of changes in policy and being reprimanded for asking about such changes; being falsely accused of having poor sales; being threatened with discipline; having her telephone calls monitored through the use of an eavesdropping device; having her private vehicle damaged and vandalized on several occasions in the Tribune private parking lot and having Tribune management ignore her concern for her property and personal safety") (alteration in the original).

Given the extremely high hurdle established by Seventh Circuit precedent, Lopez had his work cut out for him in showing that the record would allow a reasonable jury to find that Pactiv's conduct was extreme and outrageous within the meaning of Illinois law. But instead of addressing and distinguishing precedents like *Van Stan* and *Harriston*, and instead of citing cases—*any* cases—allowing an emotional distress claim to proceed on facts comparable to those alleged here, Lopez wrote the following:

> If ever there were an issue that is fact specific and requires a judicial finding of fact it is the issue of Intentional Infliction of Emotional Distress (IIED). Defendant's dismissive assertion that "Lopez's allegations do not rise anywhere close to the level of extreme and outrageous conduct required for an IIED claim" goes a long way in explaining why Defendant obviously thinks it is above the law and the reason they have found themselves as a Defendant in a lawsuit.
>
> Instead of letting the Defendant pronounce that no valid IIED claim exists, Plaintiff would prefer to let a judge or jury decide if an employer's violation of federal law in firing an employee for asking for FMLA leave because his spouse has been diagnosed with cancer and required surgery and treatment; terminating the employee's health insurance benefits within days

>of the spouse's diagnosis with cancer leaving Plaintiff further challenged in caring for a sick spouse; failing and refusing to pay legitimate business expenses owed to Plaintiff all the while Plaintiff is trying to care for his spouse and two young children constitutes "extreme and outrageous."

Doc. 73 at 9. That is the full extent of Lopez's argument regarding his intentional infliction of emotional distress claim.

"It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006). By failing to cite relevant legal authority regarding the "extreme and outrageous" element of his emotional distress claim, and by failing to apply that law to the facts of this case, Lopez forfeited the claim. *See Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (where the party "cited no relevant legal authority to the district court to support the proposition … the argument is waived"); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to [the defendant's] motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008).

For the foregoing reasons, Pactiv's summary judgment motion is granted as to the emotional distress claim (Count V) and also as to the FMLA interference claim (Counts I-II) to the extent it pertains to leave that Lopez requested and took through June 2008. The motion is denied as to the remaining claims, which will proceed to trial.

August 5, 2013

_____
United States District Judge